JDN

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David William Linder, | No. CV 06-1157-PHX-DGC (JRI) |
| Plaintiff, | **ORDER** |
| vs. | |
| City of Bullhead City Police Dep't, et al., | |
| Defendants. | |

Plaintiff David William Linder brought this civil rights action under 42 U.S.C. § 1983 against Bullhead City Police Officer Richard Anderson (Doc. #10).[1]  Defendant filed a Motion for Summary Judgement (Doc. #29), which has been fully briefed (Doc. ## 46-47). The Court will grant Defendant's motion and terminate the action.

**I.    Background**

   **A.    Second Amended Complaint**

Plaintiff's claim arose on the date of his arrest, July 21, 2004, in Bullhead City, Arizona (Doc. #10 at 1, 4). Plaintiff stated that Defendant hooked Plaintiff's cargo trailer to Defendant's truck and "took off" (id. at 4). Plaintiff alleged that Defendant did not have a search warrant for the trailer, nor was there probable cause to take the trailer (id.). Plaintiff further alleged that as a result of Defendant's actions, Plaintiff's parents were forced to make two trips from Illinois to Arizona to recover a few of Plaintiff's items, which they gave to the

---

[1] Upon screening, the Court dismissed the Bullhead City Police Department as a Defendant (Doc. #14).

Salvation Army. He claimed that his parents were denied access to most of his property and that he suffered a total loss because it is impossible to replace his lost property (id.). Plaintiff sued Defendant for damages, costs, and declaratory and injunctive relief (Doc. #13 at 3).[2]

The Court construed Plaintiff's allegations in Count I as a claim under the Fourth Amendment for violation of his right to be free from unreasonable seizures (Doc. #14).[3] Defendant was ordered to respond to Count I (id.). He filed an Answer (Doc. #17), and a Scheduling Order was issued (Doc. #19).

### B.    Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on the grounds that (1) a warrant was not necessary to seize Plaintiff's trailer because it was subject to forfeiture under state law, (2) Plaintiff's claim is precluded by the *Rooker-Feldman* doctrine, (3) a warrant was not required to inventory the items in the trailer, and (4) all of the trailer's contents were returned to Plaintiff's agent, his property damage claim therefore lacks merit (Doc. #29). Defendant asserted that Plaintiff was arrested pursuant to a federal felony warrant following a lawful search of Plaintiff's residence, which revealed evidence of an illegal drug enterprise (id. at 2). Plaintiff was arrested by officials from the Naval Criminal Investigative Service (NCIS), with assistance from the Drug Enforcement Agency (DEA), U.S. Customs officials, and the Bullhead City Police Department narcotics officers (Doc. #30, Def.'s Statement of Facts ¶ 6). Following the arrest and the seizure of the storage trailer, the Bullhead City Police Department initiated forfeiture proceedings in the Bullhead City Justice Court (id. ¶ 12). On November 1, 2004, the justice court issued an Order of Forfeiture for the trailer (id. ¶ 25).

Defendant submitted a Separate Statement of Facts (Doc. #30), which was supported by copies of the application/affidavit for a December 2003 search warrant, the search warrant, and the return of service (id., Exs. 1-3); excerpts from Plaintiff's deposition (id.,

---

[2] Plaintiff filed a separate Notice of Certificate setting forth his request for relief and verifying his Second Amended Complaint (Doc. #13).

[3] On screening, the Court dismissed Count II, which alleged falsification of documents and conspiracy (Doc. #14).

- 2 -

1    Exs. 4-7, 9); and a copy of Defendant's Non-Uniform Interrogatories to Plaintiff (id., Ex. 8).
2    Defendant also proffered his own affidavit (Doc. #31) and the affidavits of Mary Evans,
3    former property and evidence officer with the Bullhead City Police Department (Doc. #32),
4    and Thomas J. Donaldson, the prosecutor who initiated the forfeiture proceedings on behalf
5    of the Bullhead City Police Department (Doc. #33).
6         Defendant's evidence includes documents that were faxed from the DEA office in
7    Norfolk, Virginia, to the Bullhead City Police Department on June 3, 2004 – approximately
8    six weeks before Plaintiff's arrest (Doc. #31, Attachs.).  One of these documents, titled
9    "Probable Cause," along with the affidavit of Robert Cully, Jr., a Special Agent with NCIS,
10   (Doc. #30, Ex. 1, Cully Aff. ¶ 2), provide details that explain some of the odd facts in this
11   case.  Cully's affidavit was attached to the application for a search warrant of Plaintiff's
12   residence (id.).
13        The NCIS started an investigation of Plaintiff after finding that he had supplied more
14   than $20,000 worth of 5-Methoxy-N, N-diisopropyltryptamine (5-Meo-Dipt) to an individual
15   in Norfolk, Virginia, who pressed the chemical into pills and distributed them to active U.S.
16   Navy personnel (Doc. #31, Attachs.; Doc. #30, Ex. 1, Cully Aff. ¶ 11).  5-Meo-Dipt has a
17   hallucinogenic effect on the central nervous system and is often used as a "club drug" in
18   place of Ecstacy or LSD (Doc. #30, Ex. 1, Cully Aff. ¶ 4).  Plaintiff reportedly sold this
19   chemical over the internet through his web site at www.pondman.nu.  Subpoenaed
20   information on Plaintiff's bank accounts reflected deposits from 1999 to 2003 of
21   approximately $1.2 million (id. ¶ 21).
22        In April 2002, two New York youths overdosed on 5-Meo-Dipt and other tryptamines
23   purchased from Plaintiff.  One of the boys died.  A package containing the chemicals was
24   found in one boy's bedroom, and showed it had been sent from a Bullhead City post office
25   box rented to a business named Alternative Entrophy (AE) (Doc. #31, Attachs; Doc. #30, Ex.
26   1, Cully Aff. ¶ 14).  The city's Business Finance Department confirmed that AE was
27   operated by Plaintiff (Doc. #30, Ex. 1, Cully Aff. ¶ 14).  The AE web page, at
28   www.pondman.nu, appeared to focus on the manufacture of ponds; however, a link directed

1  users to a list of "research chemicals" for sale, including 5-Meo-Dipt (id.).

2  In April 2003, the DEA added 5-Meo-Dipt as a Schedule I Controlled Substance on
3  an emergency basis. A search warrant executed on Plaintiff's e-mail account revealed that
4  Plaintiff had been buying and selling 5-Meo-Dipt after it was emergency scheduled (Doc.
5  #31, Attachs.).

6  On Dec. 10, 2003, a federal search warrant was executed on Plaintiff's residence
7  (id.).[4] The search turned up a large amount of suspected 5-Meo-Dipt. During the search,
8  Plaintiff told officials that in the early 1990's he ran a business called AE, which sold
9  research chemicals used to treat fish diseases and make artificial rocks for ponds. After that,
10 he worked at a casino for five years and then quit and had since been living off of his 401k
11 funds and money he saved (id.).

12 **C.   Plaintiff's Response**

13 The Court issued an order informing Plaintiff of his obligation to respond to
14 Defendant's summary judgment motion (Doc. #36). See Rand v. Rowland, 154 F.3d 952,
15 962 (9th Cir. 1998). Plaintiff filed a response (Doc. #44), but it did not comply with the rules
16 governing summary judgment briefing, and Plaintiff's assertions did not appear to be related
17 to his claims or Defendant's summary judgment motion. The Court directed Plaintiff to file
18 an amended response (Doc. #45).

19 In his amended response, Plaintiff claims that there exist factual disputes precluding
20 summary judgment (Doc. #46). Plaintiff argues that the search and seizure of his property
21 in Arizona overlapped with seizures and investigations by officials from New York and
22 Norfolk, investigations he alleged were unlawful (id. at 2-4). Plaintiff asserted that the
23 Bullhead City Police Department sent evidence to Norfolk that further "polluted" the
24 evidence against him (id. at 4). Much of Plaintiff's response focuses on his claim that
25 because the law regarding 5-Meo-Dipt changed in April 2003, AE's business prior to that

26

27  [4]This search warrant, supported by Cully's affidavit, was signed by Magistrate Judge
28  David Duncan, of the United States District Court for the District of Arizona (Doc. #30, Ex.
    2).

- 4 -

1  date was legal.  He further argues that officials and courts acted improperly in the cases
2  against him (id. at 5-6), and he alleges that the seizure of his trailer property led to the
3  destruction of exculpatory evidence (id. at 6).

4  Plaintiff disputes that any illegal substances were found in the December 2003 search
5  (id. at 8).  Finally, Plaintiff indicates that he believes there has been a stay in the forfeiture
6  proceedings, and he received no notice of any final decision, to which he would have
7  objected (id. at 9).

8  The following items were attached to Plaintiff's amended response: (1) copies of
9  correspondence; (2) newspaper clippings about a former U.S. Deputy Attorney General and
10 an arson committed in Tennessee; (3) a list of news-related web pages; (4) Plaintiff's sworn
11 statement apparently alleging that the Norfolk case against him was fabricated; and (5) a one-
12 page "Description of Event[s]" (id., Attachs.).

13 **D.    Defendant's Reply**

14 Defendant argues in reply that Plaintiff's Amended Response fails to comply with
15 Federal Rule of Civil Procedure 56 and does not include a separate statement of facts (Doc.
16 #47).  He further argues that Plaintiff did not respond to any of the legal arguments raised by
17 Defendant (id. at 2).  Finally, Defendant contends that Plaintiff's response appears to focus
18 on other unrelated cases and, to the extent that he addresses the claim in this action, he fails
19 to raise any material issue of fact (id. at 5-6).

20 **II.   Summary Judgment Standard**

21 A court must grant summary judgment "if the pleadings, the discovery and disclosure
22 materials on file, and any affidavits show that there is no genuine issue as to any material fact
23 and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see
24 also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Under summary judgment
25 practice, the moving party bears the initial responsibility of presenting the basis for its motion
26 and identifying those portions of the record, together with affidavits, that it believes
27 demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323;
28 Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

1   If the moving party meets its burden with a properly supported motion, the burden
2   then shifts to the opposing party to present specific facts that show there is a genuine issue
3   for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995);
4   see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The opposing party need not
5   establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed
6   factual dispute be shown to require a jury or judge to resolve the parties' differing versions
7   of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89
8   (1968). But conclusory allegations, unsupported by factual material, are insufficient to defeat
9   a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).
10  Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate
11  specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249;
12  Devereaux, 263 F.3d at 1076.
13  In assessing whether a party has met its burden, the court views the evidence in the
14  light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052,
15  1056 (9th Cir. 1995). If the evidence of the non-moving party is merely colorable or is not
16  significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249-50.

17  **III.   Analysis**

18       **A.   State Law**

19  Defendant's first argument for summary judgment is that no warrant was necessary
20  to seize Plaintiff's trailer because it was subject to forfeiture under state law (Doc. #29 at 4).
21  Defendant cites to Arizona Revised Statutes §§ 13-2314 and 13-3413, which provide for
22  forfeiture in racketeering and drug offences (id.). Under Ariz. Rev. Stat. § 13-3413(A)(3),
23  property subject to forfeiture includes vehicles involved in facilitating the transportation,
24  sale, receipt of, or possession of any drugs (Doc. #29 at 5). Defendant argues that this statute
25  is similar to the Florida Contraband Forfeiture Act, Fla. Stat. § 932.701 *et seq.*, which allows
26  for the seizure and forfeiture of any vehicle used in connection with narcotics activity (id. at
27  4-5). In upholding the Florida Act, the Supreme Court found that the Fourth Amendment
28  does not require police to obtain a search warrant before seizing a vehicle from a public place

- 6 -

1 when there is probable cause to believe that the vehicle is forfeitable contraband. Florida v.
2 White, 526 U.S. 559, 564-65 (1999).

3 The difference between White and this case, however, is that White's vehicle was
4 seized at his place of employment, while Plaintiff's storage trailer was seized at his
5 residence. The Supreme Court recognized a distinction between warrantless seizures in
6 public places, where enforcement officials have greater latitude in exercising their duties, and
7 such seizures on private premises. Id. at 565-66 (citation omitted).

8 Despite this distinction, White is persuasive. Like the Florida Statute, there is nothing
9 in § 13-3413 that requires police to obtain a warrant prior to seizing property. See White,
10 526 U.S. at 562 n. 2. And the Fourth Amendment does not proscribe all state-initiated
11 seizures – only unreasonable ones. United States v. Willis, 431 F.3d 709, 714 (9th Cir. 2005)
12 (upholding seizure of firearm after a traffic stop) (citation omitted). Here, officials had
13 already searched Plaintiff's residence and trailer pursuant to a search warrant (Doc. #30, Ex.
14 2). Defendant attests that he was aware of the December 2003 search executed on Plaintiff's
15 property and he knew that illegal drugs had been found in the trailer (Doc. #31, Def. Aff.
16 ¶¶ 4-6). It is well settled that a vehicle may be seized if officials have probable cause to
17 believe it has been used to carry contraband. U.S. v. Alverez-Tejeda, 491 F.3d 1013, 1016
18 (9th Cir. 2007) (involving seizure pursuant to federal forfeiture statutes) (citing United States
19 v. Johnson, 572 F.2d 227, 234 (9th Cir. 1978), and White, 526 U.S. at 561). As Defendant
20 demonstrates, in the subsequent forfeiture proceeding the justice court found that there was
21 probable cause to believe that Plaintiff's trailer was subject to forfeiture (Doc. #33, Ex. F).

22 In addition, Defendant's seizure of Plaintiff's storage trailer occurred simultaneously
23 with Plaintiff's arrest in July 2004. A seizure incident to a lawful arrest is an integral part
24 of law enforcement procedures. Morales v. U.S., 344 F.2d 846, 851 (9th Cir. 1965). During
25 an arrest, the right to search and seizure extends to the premises in the arrested individual's
26 control and to evidence of the crime. Id. (citations omitted). Defendant's seizure of
27 Plaintiff's trailer was incidental to the lawful arrest of Plaintiff.

28 Plaintiff argues that the arrest warrant was lacking and that evidence supporting the

1  warrant was fabricated (Doc. #46 at 2-3, 7).  He also claims that thefts by the Las Vegas and
2  Bullhead City Police Departments created probable cause for officers to believe that there
3  was a large amount of cash in his storage trailer (id. at 6).  Plaintiff also contends that
4  Defendant was acting under orders from federal officials when he seized the trailer, which
5  allowed for the destruction of exculpatory evidence (id.).

6        Plaintiff's allegations do not relate to Defendant's arguments, nor are they supported
7  by evidence.  See Taylor,  880 F.2d at 1045. With respect to Plaintiff's claim that evidence
8  supporting the arrest warrant was fabricated, there is no allegation that Defendant fabricated
9  evidence, and Defendant was entitled to rely on the federal warrant.  Nothing in Plaintiff's
10 opposition responds to Defendant's evidence showing that the trailer seizure was reasonable
11 and permitted under state law without a search warrant.  On this record, Defendant had
12 probable cause to believe that Plaintiff's storage trailer was subject to seizure and forfeiture
13 under state law.

14       **B.**    ***Rooker-Feldman* Doctrine**

15       Defendant argues that the *Rooker-Feldman* doctrine is applicable in a forfeiture
16 setting and prevents Plaintiff from attacking the lower-court forfeiture proceeding and
17 probable cause determination (Doc. #29 at 7-8).  Defendant submits the affidavit of Thomas
18 Donaldson, the Assistant City Prosecutor for Bullhead City who initiated the forfeiture
19 proceedings against Plaintiff (Doc. #33, Donaldson Aff. ¶¶ 2, 4-5).  Donaldson describes the
20 steps in the forfeiture hearing, including service of the Notice of Pending Forfeiture and the
21 Complaint on Plaintiff (id. ¶¶ 6-8 & Exs. C-D), and the filing of an Application for Order of
22 Forfeiture, which Donaldson filed after Plaintiff failed to respond to the Complaint (id. ¶ 9).
23 An Order of Forfeiture was issued by the justice court in November 2004 (id. ¶ 10 & Ex. F).
24 Donaldson attests that Plaintiff did not appeal the order (id. ¶ 11).

25       Plaintiff responds that the DEA agent who served him the Notice and Complaint
26 "demanded my signature . . . I was helpless" (Doc. #46 at 9).  Plaintiff also states that he
27 wrote a letter to the Bullhead City Police Captain the night he was served and requested to
28 get his property back (id.).  Plaintiff's apparent explanation for failing to appeal the order of

1  forfeiture is that he never received notice of the final decision (id.).

2  The *Rooker-Feldman* doctrine provides that federal district courts lack jurisdiction to
3  exercise appellate review over final state court judgments. Henrichs v. Valley View Dev.,
4  474 F.3d 609, 613 (9th Cir. 2007); Mothershed v. Justices of the Supreme Court, 410 F.3d
5  602, 606 (9th Cir. 2005). Under the doctrine, only the United States Supreme Court may
6  review state court decisions. Partington v. Gedan, 961 F.2d 852, 864 (9th Cir. 1992). The
7  doctrine is narrow, confined to "cases brought by state-court losers complaining of injuries
8  caused by state-court judgments rendered before the district court proceedings commenced
9  and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v.
10 Saudi Basic Indus., Corp., 544 U.S. 280, 284 (2005); Lance v. Dennis, 546 U.S. 459, 464
11 (2006).

12 Plaintiff does not rebut that *Rooker-Feldman* bars his claim. Plaintiff acknowledges
13 that he was served with the Notice of Pending Forfeiture and the Complaint, and he does not
14 dispute that he failed to respond. Nor does he present evidence to dispute that the justice
15 court issued a final order. To the extent Plaintiff challenges the order of forfeiture, his claim
16 is barred by *Rooker-Feldman*.

17 **C.    Inventory of Plaintiff's Property**

18 Defendant argues that the Fourth Amendment did not require that he obtain a warrant
19 to inventory the contents of Plaintiff's seized trailer (Doc. #29 at 8). Defendant submits that
20 police inventory procedures, administered in good faith, are reasonable and not violative of
21 the Fourth Amendment (id.). Defendant further argues that all of Plaintiff's items were
22 returned to Plaintiff's authorized agent, and he therefore does not have a claim for damages
23 for lost property (id. at 9-10).

24 Defendant submits the affidavit of Mary Evans, former property and evidence officer
25 for the Bullhead City Police Department (Doc. #32, Evans Aff. ¶¶ 2-3). Evans attests that
26 under department practice and procedures, contents of a seized vehicle are inventoried and
27 arrangements are made to return the items to the owner (id. ¶ 7). She states that a partial
28 inventory was done on the items in Plaintiff's trailer in July 2004, and the inventory was

1 completed in October 2004 (id. ¶¶ 8, 14-15).  Pursuant to the Bullhead City Police
2 Department procedures, after each inventory, Plaintiff was notified so that arrangements
3 could be made for pick-up of his property (id. ¶¶ 9, 15).  According to Evans, all of
4 Plaintiff's property was picked-up by his father, Ralph Linder, who signed Property Release
5 Forms when he collected the items from the trailer (id. ¶¶ 13, 18 & Exs. C, E).

6 A warrantless inventory search of a vehicle impounded by police is constitutional
7 when conducted pursuant to standard police department policy.  South Dakota v. Opperman,
8 428 U.S. 364, 372 (1976).  "[I]nventory procedures serve to protect an owner's property
9 while it is in the custody of the police . . . and to guard the police from danger."  Colorado
10 v. Bertine, 479 U.S. 367, 372 (1987).

11 Plaintiff's response does not address the inventory of his property, nor does he
12 respond to Evan's affidavit (see Doc. #46).  Plaintiff claims that exculpatory evidence was
13 destroyed, but he does not identify what items constituted exculpatory evidence (id. at 6).
14 Plaintiff does not refute Defendant's contention that the inventory was completed pursuant
15 to departmental procedures that were reasonable and lawful.

16 In sum, Plaintiff fails to show that there exists any genuine issues of material fact that
17 preclude summary judgment on his Fourth Amendment claim.  Defendant's Motion for
18 Summary Judgment will therefore be granted, and this action will be terminated.

19 **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. #29) is
20 **granted**.  The Clerk of Court must enter judgment accordingly and terminate this action.
21 DATED this 3rd day of September, 2008.

*David G. Campbell*
United States District Judge